### A10A0497. POUNDS et al. v. BROWN et al.
(695 SE2d 66)

JOHNSON, Presiding Judge.

Edgar Pounds and several other members of Cobb Electric Membership Corporation filed a derivative action against Cobb EMC, its President and CEO, and the members of its Board of Directors, generally alleging causes of action for breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment. The parties later entered into a Joint Proposal for Resolution of Derivative Litigation (the "Settlement Agreement"), and the derivative plaintiffs now appeal from a trial court order that refused to provide them with the relief they requested in a motion to enforce the Settlement Agreement. For the reasons discussed below, we affirm in part and reverse in part, and we remand this case to the trial court to enforce the Settlement Agreement with an order consistent with this opinion.

On a motion to enforce a settlement agreement, we will not disturb a trial court's findings of fact unless they are clearly erroneous.[1] However, a trial court's construction of a settlement agreement is a matter of law and is subject to de novo review.[2] Because a settlement agreement is a contract,

> it is subject to the usual rules of statutory construction. While the cardinal rule of construction is to determine the intention of the parties, no construction is required or

---

[7] See *Johnson v. State*, 287 Ga. App. 759, 763 (4) (652 SE2d 836) (2007).

[1] *In re Estate of Huff*, 287 Ga. App. 614, 614-615 (652 SE2d 203) (2007).

[2] *Peacock v. Spivey*, 278 Ga. App. 338, 339 (1) (629 SE2d 48) (2006).

permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation.[3]

Here, the Settlement Agreement provided that a meeting of the members of Cobb EMC would be held within 60 days of the date the Settlement Agreement was approved by the trial court. At that meeting, the members would be presented with a resolution, which would be proposed by the derivative plaintiffs, seeking to allow members "the right to vote for directors by mail-in ballots, subject to the development and implementation of appropriate security measures." In addition, the Settlement Agreement provided the derivative plaintiffs with the right to present a second resolution, related to retirement benefits for the directors.

The Settlement Agreement also provided that Cobb EMC would send a notice to all its members informing them of the upcoming meeting, and a form of the notice was attached as an exhibit to the Settlement Agreement. Finally, the Settlement Agreement provided that Cobb EMC would pay all reasonable expenses incurred in notifying members of the upcoming meeting and of the resolutions to be presented to them. On December 2, 2008, the trial court issued a final judgment, in which it approved the Settlement Agreement and ordered the parties to "cooperate fully with each other" in implementing the terms of the Settlement Agreement.

On December 12, 2008, the Board of Directors of Cobb EMC adopted numerous amendments to the Cobb EMC Bylaws. One of these amendments authorized the Board of Directors to establish proxy voting for any member meeting at which the election of directors was not on the agenda, which included the upcoming member meeting provided for by the Settlement Agreement. Previously, Cobb EMC members had conducted all business in person at the member meetings, and proxy voting apparently had not been used by Cobb EMC since its formation in 1938. Other amendments adopted by the Board of Directors on December 12, 2008 generally (i) limited members from transacting business at member meetings other than as provided in the agenda of the meeting prepared by the Board of Directors, and (ii) increased the number of directors required to call a special meeting of the members.

In addition, the Board of Directors approved a proxy statement to be sent to all of its members eligible to vote at the special meeting. Instead of including or referencing proposed resolutions prepared by

---

[3] (Citation and punctuation omitted.) *City of Demorest v. Roberts & Dunahoo Properties*, 288 Ga. App. 708, 711-712 (1) (655 SE2d 617) (2007).

the derivative plaintiffs, the proxy statement included resolutions approved by the Board of Directors (i) providing that contested Board elections would be conducted only through mail-in ballots, with a committee of the Board of Directors designating the manner in which ballots would be cast, and providing that contested Board elections would be decided by a plurality instead of majority vote, and (ii) related to retirement benefits for the directors.

On December 29, 2008, the derivative plaintiffs filed an emergency motion to enforce the trial court's final judgment approving the Settlement Agreement. The trial court appointed a special master to consider the emergency motion, and, after conducting a hearing, the special master (i) revoked the disputed amendments to the Bylaws adopted by the Board of Directors and (ii) ordered Cobb EMC to submit to the members the proposed resolutions prepared by the derivative plaintiffs and not the proposed resolutions approved by the Board of Directors.

After the derivative defendants filed exceptions to the special master's order, the trial court conducted a hearing on March 13, 2009. While Cobb EMC withdrew the Bylaw amendments limiting the business members could transact at meetings, the trial court found that the other amendments to the Bylaws were valid, and it ordered Cobb EMC to submit to the members the proposed resolutions prepared by both the derivative plaintiffs and those prepared by the Board of Directors.

1. The derivative plaintiffs appeal the trial court's finding, reversing the finding of the special master, that the Bylaw amendments adopted by the Board of Directors on December 12, 2008 were valid.

(a) We first address the Bylaw amendment providing for proxy voting at future meetings of the members, including the special meeting at which the members would vote on the proposed resolutions provided for in the Settlement Agreement. While the derivative defendants properly assert that proxy voting is common among Georgia companies, we find this amendment to be contrary to the terms of the Settlement Agreement.

The Settlement Agreement provides that Cobb EMC will call a special meeting of its members at which the members will vote on a proposed resolution submitted by the derivative plaintiffs regarding the future election of directors. In addition, the form of notice that was referenced by and attached as an exhibit to the Settlement Agreement provides that the proposed resolution regarding the future election of directors would "be presented for Cobb EMC member consideration and vote at the next meeting of Cobb EMC members." However, the Bylaw amendment establishing proxy voting provides that members would appoint a proxy manager to

vote their shares at least five business days prior to the meeting. Once the proxy manager is appointed, the Bylaw amendment does not provide any means for members to consider and vote upon the resolution "at" the special meeting. As a result, the trial court erred in allowing Cobb EMC to modify the voting procedures in a manner contrary to the plain and unambiguous terms agreed upon by the parties.[4]

Moreover, the trial court's order adopting the Settlement Agreement directed Cobb EMC "to cooperate fully" with the derivative plaintiffs regarding the implementation of the Settlement Agreement. While the derivative defendants dispute the special master's finding that their motives in adopting the Bylaw amendments were improper, they acknowledge that they adopted the amendments without providing notice to the derivative plaintiffs. Even though Cobb EMC may not have been required under Georgia law or its organizational documents to notify the derivative plaintiffs of the changes being made to member voting procedures, full cooperation would have required such notice given that the amendment changed the voting procedures that would govern the special meeting called for by the Settlement Agreement. Especially considering that such change was being made for the first time in Cobb EMC's lengthy history, any finding that the amendment constituted "full cooperation" with the derivative plaintiffs was clearly erroneous.

(b) The derivative plaintiffs also claim that both Georgia law and Cobb EMC's existing Bylaws were violated by the Bylaw amendments limiting the business that can be conducted at member meetings and increasing the number of directors required to call special meetings. However, after making its final order approving the Settlement Agreement, the trial court retained jurisdiction of the dispute between the parties only as to the matters raised in the underlying lawsuit and as to the matters addressed in the Settlement Agreement. Given that the derivative plaintiffs' objections to these Bylaw amendments were not related to the Settlement Agreement and were not raised in the underlying litigation, the trial court was without jurisdiction to consider them.[5] As a result, the derivative defendants' motions to dismiss claims related to certain of these Bylaw amendments and the derivative plaintiffs' motions to strike the derivative defendants' motions are all dismissed as moot.[6]

---

[4] See *Savannah Yacht Corp. v. Thunderbolt Marine*, 297 Ga. App. 104, 111 (1) (b) (676 SE2d 728) (2009).

[5] See *Johnson v. James*, 246 Ga. 680, 682 (272 SE2d 692) (1980).

[6] See *Atmos Energy Corp. v. Ga. Public Svc. Comm.*, 290 Ga. App. 243, 249 (2) (659 SE2d 385) (2008).

2. The derivative plaintiffs also claim that the trial court erred in allowing Cobb EMC to distribute its own resolutions to members eligible to vote at the special meeting and recommending that they vote in favor of such resolutions. Because the Settlement Agreement expressly provided that the derivative plaintiffs would prepare the resolution regarding future voting of directors and that they would suggest security measures to ensure that elections were conducted fairly, we agree.

The form of notice referenced by and attached to the Settlement Agreement provides that "[a] proposed amendment" regarding future director elections would be presented for consideration and vote at the special meeting. However, the trial court order being appealed provided that Cobb EMC would present two proposed amendments regarding director elections to the members: (i) the resolution that the Board of Directors prepared and would recommend to the members that required proxy voting and changed the director election requirement from a majority to a plurality, and (ii) the resolution prepared by the derivative plaintiffs, including their recommended security measures as provided by the Settlement Agreement, that the Board of Directors would not recommend.

While the Settlement Agreement does not expressly forbid Cobb EMC from submitting and recommending dueling resolutions to the members, the special master properly noted that Georgia courts must construe contracts under the maxim that "the express mention of one thing implies the exclusion of another."[7] Here, the Settlement Agreement (i) called for a special meeting of members, (ii) provided that the members would vote at such meeting on a resolution regarding future election of directors, and (iii) authorized the derivative plaintiffs to prepare such a resolution for submission to the members. Had Cobb EMC wanted to offer its own resolution regarding future election of directors at the special meeting, it should not have agreed that "a" proposed resolution regarding such issue would be presented at the meeting.

The trial court indicated its understanding that the Settlement Agreement limited Cobb EMC's ability to present shareholder resolutions at the special meeting when it provided that the "only" matters to be considered at the meeting were the dueling resolutions regarding director election procedures and the resolutions relating to retirement benefits for directors. However, we find that because the parties agreed "a" proposed resolution regarding director election would be submitted to the members and that the derivative plaintiffs

---

[7] *George L. Smith II Ga. World Congress Center Auth. v. Soft Comdex*, 250 Ga. App. 461, 464 (1) (b) (550 SE2d 704) (2001).

would be the ones to prepare the proposed resolution, the trial court erred in allowing Cobb EMC to submit its own resolution regarding director elections. We therefore remand this case to the trial court to issue an order, consistent with this opinion, that enforces the terms of the Settlement Agreement.

*Judgment affirmed in part and reversed in part, and case remanded with direction. Barnes and Phipps, JJ., concur.*

DECIDED APRIL 13, 2010 — 

*Carr & Palmer, W. Pitts Carr, Dupree & Kimbrough, Hylton B. Dupree, Jr.,* for appellants.

*Schreeder, Wheeler & Flint, David H. Flint, Brock, Clay, Calhoun & Rogers, Harbert S. Gregory, Jr., Weinstock & Scavo, Michael Weinstock, Richard V. Merritt, Akin & Tate, S. Lester Tate III, Parker, Hudson, Rainer & Dobbs, Leo E. Reichert, Sutherland, F. Barry McCabe, King & Spalding, Dwight J. Davis, Awtrey & Parker, Robert B. Silliman,* for appellees.