### S09A1734. BURNETT v. SLATTER et al.
(686 SE2d 126)

MELTON, Justice.

This is a quiet title action regarding property located at 2166 Rollingview Drive in DeKalb County. The facts, as found by the special master and adopted by the trial court, show that, on December 23, 1975, Zindi Mims acquired the property while engaging in drug trafficking activities. On May 18, 1977, Mims transferred the property to Lorenzo Callahan, her brother-in-law, and, on August 2, 1977, Lorenzo transferred the property to Sabrina Callahan Burnett,

who was Mims' four-year-old daughter. Beginning in 1980, Mary and Homer Slatter, Burnett's aunt and uncle, were inhabiting the property subject to an oral lease-purchase agreement they had previously made with Roland Callahan, Mims' husband and Burnett's father. Mims confirmed that this agreement existed.

On March 16, 1988, Mims and Callahan were federally indicted for RICO violations and drug charges, and an in rem federal forfeiture proceeding was brought against the property. On March 25, 1988, the Slatters entered into an Occupancy Agreement with the U. S. Marshal Service to rent the property. On April 25, 1988 and May 4, 1988, Mims, on behalf of Burnett, filed a claim to the property and an answer to the forfeiture action, respectively. On August 22, 1988, both Mims and Callahan entered into a plea agreement with the U. S. Government. In this agreement, both parties agreed to withdraw any claim to the property.

On October 17, 1990, the United States and the Slatters entered into a stipulation of settlement. The Slatters represented that they were the sole owners of the property, subject only to a note given to Callahan as part of a lease purchase agreement. In the stipulation, the Slatters agreed to execute a promissory note and deed to secure debt in favor of the United States, and the United States agreed to release the property to the Slatters, to release its lis pendens on the property, and to dismiss the forfeiture case. On October 18, 1990, the Slatters agreed to the forfeiture of the promissory note and rental payments that had been paid to the United States during the pendency of the case.

On October 19, 1990, a consent order was entered in the forfeiture action. In this order, the court acknowledged that a claim had been entered on Burnett's behalf, but it stated erroneously that no answer had been filed on her behalf. The order also stated that the Slatters had obtained a deed to the property from Burnett and that Mims agreed that the Slatters had a contract to purchase the property. On January 30, 1991, a judgment was entered, stating: "All rights, titles and interest in, or claims to the property by anyone other than the United States and Homer and Mary Slatter [are] hereby extinguished." Thereafter, the Slatters paid off a promissory note on the property to the U. S. Government, and paid all property taxes as they became due. The Slatters also paid for the upkeep and maintenance of the property. The Slatters, however, never received any deed to the property from Mims on behalf of Burnett.

After Homer Slatter passed away, Mary Slatter, acting as administrator of his estate, signed and recorded a quitclaim deed transferring the property to herself, individually. When Burnett discovered this deed, she claimed that the property actually belonged to her and

she demanded that the Slatters either pay her the current value of the property or pay her monthly rent. Burnett then filed the present quiet title action on April 1, 2008.

Mary Slatter later filed a federal action to enforce the forfeiture judgment, and, on March 11, 2009, the federal court entered another consent order. In this order, the federal court characterized the prior judgment in the forfeiture case and its effect as follows:

> On January 30, 1991, the Court issued a judgment which, based on the agreement of Mims in her plea agreement to withdraw her claim on behalf of Sabrina to the real property, held all potential claimants other than the Slatters in default, and extinguished all right, title, and interest in the real property other than the Slatters and the United States. The judgment then forfeits the rental payments, the Promissory Note and Deed to Secure Debt to the United States, and authorizes the United States to dispose of those forfeited properties according to law and consistent with the terms of the Stipulation of Settlement and the Consent Order.
>
> In light of the agreement of the Parties to the above facts that resolve their dispute in this case, the Motion to enforce Judgment filed by Mary Slatter on December 10, 2008, is hereby DENIED as MOOT.

The present Georgia quiet title action was assigned to a special master who made three determinations: (1) as a result of the federal forfeiture action, Slatter's right to the property was fully determined and Burnett's claim was barred by the doctrine of res judicata; (2) the Slatters were entitled to the property under equitable principles; and (3) in any event, the Slatters obtained the property through adverse possession under color of title from the United States. The trial court adopted the special master's findings of fact and conclusions of law. Burnett now appeals.

It is well settled that a person must establish ownership of property on the strength of her own title and cannot prevail in a quiet title action by relying on the weaknesses in another's title. *Smith v. Ga. Kaolin Co.*, 269 Ga. 475 (2) (498 SE2d 266) (1998). The record makes clear that any right or title Burnett may have had to the property was waived by Mims, acting as her guardian. As found by the District Court, the 1991 judgment was based on Mims' agreement to withdraw her claim on behalf of Burnett to the real property. This plea agreement also stated that Mims would make no

further claims. It is this agreement by Mims, on behalf of Burnett, that allowed the federal court to find and rule in its 1991 judgment that all potential claimants other than the Slatters were in default, and, as a result, that 1991 order extinguished all right, title, and interest in the real property other than that of the Slatters and the United States. This order merely enforced the waiver already agreed to by Mims, on behalf of Burnett.

Furthermore, collateral estoppel now prevents Burnett from pursuing the current quiet title action.

> [W]here there is identity of parties and subject matter, res judicata bars relitigation of matters that were or could have been litigated in an earlier action. Collateral estoppel, like res judicata, requires identity of parties or privity. However, unlike res judicata, collateral estoppel does not require identity of the claim but only precludes readjudication of an issue already adjudicated between the parties or their privies in a prior action.

(Punctuation and footnotes omitted.) *Hardwick v. Williams*, 272 Ga. App. 680, 682 (2) (b) (613 SE2d 215) (2005). Mims, as Burnett's guardian, asserted claims on Burnett's behalf as part of the prior forfeiture action, and, in this forfeiture action, the issue of the property's ownership was clearly in issue and decided by the federal court. Burnett, through her guardian, contributed to and enabled the federal judgment finding that she had no claim to the property. Collateral estoppel prevents Burnett from circumventing this judgment now. Moreover, even irrespective of collateral estoppel, the record is clear in this case that any right Burnett might have had to the property was waived by her mother, acting as Burnett's legal guardian. Given this waiver, Burnett simply has no claim to the property at this point in time. For this reason, the trial court did not err by finding that Burnett does not have title to the property.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 9, 2009.

*McGee & Oxford, James C. Brissette*, for appellant.
*Jay L. Strongwater, Adam M. Hames*, for appellees.