**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 9, 2026**

# In the Court of Appeals of Georgia

A25A1959. MANNA ROOF AND CONSTRUCTION, LLC v. JONG HYUN YOUN.

DILLARD, Presiding Judge.

Manna Roof and Construction, LLC appeals the trial court's dismissal of its breach-of-contract action against Jong Hyun Youn based on the doctrine of res judicata. More precisely, Manna argues the court—in an earlier proceeding—lacked jurisdiction to dismiss its complaint when it had already done so voluntarily. And even if the court had jurisdiction to dismiss its complaint, Manna contends res judicata does not apply here because it did not have a fair and full opportunity to litigate its claims. For the following reasons, we reverse.[1]

---

[1] Oral argument was held on September 24, 2025, and is archived on the Court of Appeals of the State of Georgia's website. See Court of Appeals of the State of Georgia, Oral Argument, Case No. A25A1959 (Sept. 24, 2025), available at

Accepting all well-pleaded allegations in the complaint as true,[2] the record shows that Manna is a roofing company owned and operated by Joshua Heo. At some point, Youn's roof was damaged during a hail storm, and he hired Manna to replace it for $26,656.87. This expense was to be paid by Youn's insurance company, Farmers Insurance. Youn made the first payment of $10,918.59 to Manna from insurance proceeds and did so with the understanding that he would pay the balance once the work was completed and he received the remaining funds from Farmers (plus a $1,000 deductible). But according to Manna, Youn failed to do so. And in Heo's view, Youn was seeking to exploit his tragic circumstances—a catastrophic fall while repairing the roof that left him paralyzed. Even so, Manna completed the roof repair and Youn received the balance of $11,738.28 from Farmers; but Youn did not pay Manna the remaining amount due for the work performed.

---

https://vimeo.com/1122948445.

[2] As we have explained, in ruling on a motion to dismiss, the trial court "must accept as true all well-[pleaded] material allegations in the complaint and must resolve any doubts in favor of the plaintiff[,] and [w]e review the trial court's ruling de novo." *Fritz v. Shadwich*, 312 Ga. App. 906, 906 (720 SE2d 361) (2011) (quotation marks omitted).

On January 8, 2020, Heo filed a *pro se* breach-of-contract complaint in the Superior Court of Gwinnett County against Youn on behalf of himself and (ostensibly) Manna. More precisely, the complaint alleged that Youn failed to satisfy his financial obligations under the contract for roof repairs. Heo and Manna sought $12,681 for the completion of the roof repair, and interest "at the rate of 10% annum from the date assessment first became due and payable[.]" Heo also requested the "judicial foreclosure" of the Manna lien against Youn's property in the "same manner as other liens for the improvement of real property subject to all superior liens and encumbrances."

Youn answered the complaint, denying some of its factual allegations, raising affirmative defenses, and asserting counterclaims against Heo and Manna. Specifically, Youn claimed Manna failed to complete the roof repairs and also caused "extensive damage to many parts [of] the roof." Youn also contended that Manna "left an enormous amount of trash and debris" on his property, which he had to remove at his expense. Lastly, Youn claimed that he incurred expenses in remedying the damage Manna caused to his property. As a result, Youn requested $20,000 for the damage to his residence, as well as punitive damages and attorney fees.

On September 27, 2023, the trial court issued an order, instructing Manna to obtain counsel within 30 days because, in Georgia, a limited-liability company is required to be represented by counsel.[3] And in doing so, the court cautioned Manna that its failure to comply *might* result in the dismissal of its case ("The failure to comply with this Order *may* result in an Order Dismissing this Complaint").[4] On November 13, 2023, Heo filed a *pro se* motion seeking to voluntarily dismiss the case. In its entirety, Heo's handwritten motion stated, "Canceling the case. I need to cancel it please. I can't afford [a] lawyer," and it was captioned "Bal Heo [v.] Jong Hyun Youn." The motion was signed only by Heo and made *no* mention of Manna. Even so, on November 25, 2023, Heo and Manna filed an *amended* complaint, which was identical to the original complaint—except that it was filed by their newly obtained

---

[3] See *Eckles v. Atlanta Tech. Grp., Inc.*, 267 Ga. 801, 805(2) (485 SE2d 22) (1997) (noting that "allowing laymen to serve as unlicensed attorneys for corporations in courts of record would be contrary to the public interest and, in the exercise of our inherent power over the practice of law in this state, we hereby prohibit such representation"); *Alexander v. Francis*, 369 Ga. App. 580, 580 n.1 (894 SE2d 161) (2023) (noting that "corporations cannot be represented pro se"); *Winzer v. EHCA Dunwoody, LLC*, 277 Ga. App. 710, 713(3) (627 SE2d 426) (2006) (noting that "[l]ike a corporation, allowing a limited liability company to be represented in court by a nonattorney agent would permit the practice of law by an unlicensed layman who is not subject to the discipline of the court").

[4] (Emphasis added).

counsel. Above his signature, the attorney noted that he filed a notice of appearance as counsel for Heo and Manna a few days earlier on November 21, 2023.

On November 29, 2023, the trial court held a hearing, which the transcript characterized as a "Counterclaim Bench Trial."[5] At the outset, the court asked Youn's counsel if he wanted to make any opening remarks since they were "proceeding on [his] counterclaim[,]" and he chose to do so. In contrast, Manna's counsel opted to defer his statement until the close of trial. Heo, Youn, and one of Youn's former employees testified at the hearing, and several exhibits were submitted into evidence. At the close of the hearing, the court stated it would take the matter under advisement. That same day, the court issued a contradictory order dismissing Manna's complaint because it failed to *prove damages* at the hearing, but also noting that the hearing was "solely on [Youn's] Counterclaim" and interpreting the voluntary dismissal filed by Heo as being "filed by both Plaintiffs [*i.e.*, Heo and

---

[5] Heo was named as a plaintiff in the amended complaint because his counsel re-filed the original complaint *as* the amended complaint. But it is undisputed that Heo moved to voluntarily dismiss the lawsuit against Youn before the hearing (in part), and the trial court found Heo was no longer a party in its order dismissing *Manna's* complaint. And as explained below, the filing of an amended complaint does not revive a lawsuit that has been voluntarily dismissed. See *infra* note 28.

Manna].”[6] The court also dismissed Youn's counterclaim, finding that he too failed to prove damages. As a result, the court ordered the clerk of court to "mark [the] case as DISPOSED on the docket."

Around one month later, Manna—through counsel—initiated the *current* action in the Superior Court of Gwinnett County[7] against Youn based on the same factual background (albeit more detailed) underlying the first lawsuit. Manna alleged claims of fraud and deceit, unjust enrichment, quantum meruit, money had and received,

[6] The trial court's order is cryptic and confusing. The court says it *interpreted* Heo's voluntary dismissal as covering both Heo and Manna, and it notes that Manna's counsel argued at the hearing that the dismissal "only applied to the individual Plaintiff and not Manna . . ."; but it never actually ruled on this issue. The court merely concludes its "analysis" by stating that Manna "failed to timely comply" with its September 27, 2023 order to obtain counsel—which only provided that it might dismiss the complaint after 30 days if Manna failed to hire counsel by the deadline. It is unclear, then, whether the court believed (1) Heo's voluntary dismissal dismissed the complaint for both Heo and Manna; (2) Heo's voluntary dismissal only dismissed Heo from the lawsuit; (3) Manna's failure to hire counsel within 30 days of the court's order automatically dismissed the company from the lawsuit without the need for another order; (4) a combination of (2) and (3); or (5) some other unexpressed reason. It is also impossible to square the court's declaration that the hearing was "solely on [Youn's] Counterclaim" with its simultaneous assertion that Manna failed to meet its burden of proving the damages sought in its complaint.

[7] Manna's complaint was originally filed in the State Court of Gwinnett County, but it was later transferred to the Superior Court of Gwinnett County and assigned to the same judge who presided over the first case. Heo is not a plaintiff in the current case.

breach of contract, breach of duty of good faith and fair dealing, and "claim on an open account." Manna also requested attorney fees, expenses of litigation, and punitive damages. In short, Manna sought the same relief as in its prior lawsuit, except it slightly increased the percentage of interest it believed should be awarded.

Youn filed a response to the complaint, denying many of its factual allegations and raising affirmative defenses. Youn also moved to dismiss Manna's complaint, alleging that its claims were barred by the doctrine of res judicata.[8] More precisely, Youn claimed res judicata applied because (1) the causes of action in the instant complaint and those in the prior lawsuit were identical, (2) the parties were the same in both cases,[9] and (3) the first case was adjudicated on the merits by a court of competent jurisdiction. So, under those circumstances, Youn sought dismissal of the case with prejudice and asked to be awarded attorney fees and costs of litigation.

---

[8] As explained below, the purpose of res judicata is to prevent the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action. See *infra* note 14 & accompanying text.

[9] Youn concedes that Heo is not a party to this case, but contends that, as its owner, he has the same interests as Manna. In any event, as explained below, Manna does not dispute that the parties in the prior lawsuit and this one are identical, and so it has abandoned any argument to the contrary here. See *infra* note 17.

Manna opposed the motion, contending that res judicata did not apply because its claims in the first lawsuit were not adjudicated on the merits. Specifically, Manna argued that it voluntarily dismissed its complaint before the entry of the trial court's order, and the court held a hearing solely on Youn's counterclaim. Even so, after a hearing,[10] the court dismissed Manna's complaint as barred by res judicata. In doing so, the court found the complaint here and the one from the prior lawsuit were based on the same operative facts, the claims in the prior case were litigated at a hearing, and the claims were adjudicated on the merits in its final order. The court acknowledged that Manna raised additional claims in the instant case, but it concluded those claims could have been raised in the first lawsuit because they were based on the same operative facts. Manna then filed a motion for reconsideration, which the court denied. This appeal follows.

---

[10] Although the transcript of this hearing is not included in the appellate record, it is undisputed that a hearing occurred; and in any event, a transcript is not necessary to the resolution of this appeal.

We review a trial court's ruling on a motion to dismiss *de novo*.[11] In ruling on such a motion, the court must "accept as true all well-pleaded material allegations in the complaint and . . . resolve any doubts in favor of the plaintiff."[12] And in Georgia, OCGA § 9-12-40 "represents a codification of the common law doctrine of res judicata,"[13] providing:

> A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.

The codified (and historical) purpose of the doctrine of res judicata is to "prevent the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of

---

[11] See *Choi v. Immanuel Korean United Methodist Church*, 327 Ga. App. 26, 27 (755 SE2d 354) (2014) (explaining, in a case in which a complaint was dismissed, in part, as barred by res judicata, that this Court reviews a trial court's ruling on a motion to dismiss *de novo*).

[12] *Premier Eye Care Assocs., P.C. v. Mag Mut. Ins. Co.*, 355 Ga. App. 620, 623 (844 SE2d 282) (2020) (quotation marks and brackets omitted).

[13] *Carson v. Brown*, 348 Ga. App. 689, 707(3)(a) (824 SE2d 605) (2019).

action."[14] In other words, res judicata prevents a plaintiff from "instituting a second complaint against a defendant on a claim that has already been brought, after having previously been adjudged not to be entitled to the recovery sought on that claim."[15] Indeed, three prerequisites must be satisfied before res judicata applies: "(1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction."[16] With these guiding principles in mind, we turn now to Manna's specific claims of error.

1. To begin with, Manna contends the trial court in the first lawsuit lacked jurisdiction to adjudicate its claims because it voluntarily dismissed its complaint

---

[14] *Bostick v. CMM Props., Inc.*, 297 Ga. 55, 57 (772 SE2d 671) (2015) (quotation marks and brackets omitted). Accord *Carson*, 348 Ga. App. at 707–08(3)(a); *see also* Kevin M. Clermont, *Res Judicata As Requisite for Justice*, 68 Rutgers U.L. Rev. 1067, 1072 (2016) (noting that "[i]n England one did not hear much talk of res judicata in the very early days of a disorganized court system and undeveloped record keeping," but "soon English courts saw the need for some finality so that their judgments meant something, and notions akin to res judicata started to emerge," and by "the 1200s Bracton recognized that the principle of res judicata lay in English cases.").

[15] *Karan, Inc. v. Auto-Owners Ins. Co.*, 280 Ga. 545, 546 (629 SE2d 260) (2006) (quotation marks omitted). Accord *Waldroup v. Greene Cnty. Hosp. Auth.*, 265 Ga. 864, 865–66(1) (463 SE2d 5) (1995).

[16] *Karan, Inc.*, 280 Ga. at 546 (quotation marks omitted). Accord *Waldroup*, 265 Ga. at 866(1).

before the court's ruling.[17] We disagree—but even if Manna is arugably correct, it ultimately makes no difference.

Our analysis begins with Georgia's statute for voluntary dismissals, OCGA § 9-11-41, which provides:

> (a) Voluntary dismissal; effect. (1) By plaintiff; by stipulation. Subject to the provisions of subsection (e) of Code Section 9-11-23, Code Section 9-11-66, and any statute, an action may be dismissed by the plaintiff, without order or permission of court: (A) By filing a written notice of dismissal at any time before the sixtieth day following the date the opposing party serves an answer . . . .

A voluntary dismissal under OCGA § 9–11–41(a) is "a matter of right and terminates the action."[18] A trial court has no power, then, to "order reinstatement of the action after it has been voluntarily dismissed."[19] In other words, a voluntary dismissal

---

[17] Manna does not challenge the trial court's finding that the first two prerequisites for res judicata are satisfied here. As a result, it has abandoned any argument in that respect. See *Jones v. Bd. of Regents of Univ. Sys. of Ga.*, 262 Ga. App. 75, 79(3) (585 SE2d 138) (2003) ("As [appellant] does not argue these claims in his appellate brief, they are deemed abandoned.").

[18] *Gallagher v. Fiderion Grp., LLC*, 300 Ga. App. 434, 435–36(1) (685 SE2d 387) (2009) (quotation marks omitted).

[19] *Id.* at 436(1) (quotation marks omitted).

operates to "divest the court of jurisdiction, after which the trial court [has] no authority to enter additional orders[.]"[20]

Here, although Manna is correct that a voluntary dismissal of its case in the first lawsuit *would* have divested the trial court of jurisdiction to adjudicate its claims, the record does not reflect that the *company* ever dismissed its action against Youn. And significantly, Manna argued the *exact opposite* in the prior lawsuit, contending that Heo's voluntary dismissal only applied to him individually, not Manna.[21] Even so, in

---

[20] *Id.* (quotation marks omitted).

[21] Heo's handwritten voluntary dismissal makes no mention of Manna (not even in its caption). See *Anago Franchising, Inc. v. Shaz, LLC*, 677 F3d 1272, 1276(1) (11th Cir. 2012) (noting that a *de novo* review requires a reviewing court "to determine the parties' intent when they filed the [Rule 41 dismissal], and the best indication of that intent is the document itself."). See also *Gallagher v. Fiderion Grp., LLC*, 300 Ga. App. 434, 436(1) (685 SE2d 387) (2009) (noting that "[b]ecause an *unqualified* dismissal without prejudice completely extinguishes the action as if it had never been filed, prior orders entered in the case are superseded") (emphasis added)). But even if Heo possibly intended to dismiss the entire lawsuit, and not just his individual claims, the statements and actions by Manna's attorney in the prior proceeding also support interpreting the dismissal as being limited only to Heo's claims—*i.e.*, filing an *amended* complaint and stating that Heo did not have the authority to dismiss the lawsuit on behalf of Manna (notwithstanding his later attempt to rescind or re-characterize this argument and objection). As a result, we conclude Manna cannot argue to the contrary in this proceeding. See *In re McCool*, 267 Ga. App. 445, 448 (600 SE2d 403) (2004) (noting that statements made by a party's counsel during a hearing or trial are regarded as admissions in judicio and are binding on the party."). Accord *Choate Const. Co. v. Auto-Owners Ins. Co.*, 318 Ga. App. 682, 686(1) (736 SE2d 443)

12

support of its argument, Manna now relies on Heo's one-page, *pro se*, handwritten voluntary dismissal, which sought to "cancel" the complaint and was submitted and signed *only by Heo* with no reference to Manna. So, while *Manna* now refers to this document as its "first voluntary dismissal" of the case, this directly contradicts the argument it made in the prior lawsuit.[22] Consider again the timeline from the first lawsuit:

♦ On January 8, 2020, Heo files a *pro se* breach-of-contract complaint against Youn on behalf of both himself and (ostensibly) Manna.

♦ On February 28, 2020, Youn files his answer and counterclaim.

♦ On September 27, 2023, the trial court issues an order on its "own motion," noting that Manna "is a limited liability company," and "the law is clear in Georgia that limited liability companies must be represented by counsel," so Heo could not represent Manna. Even so, the court found that Heo's inclusion of Manna in his pro se complaint

---

(2012); *Hollberg v. Spalding Cnty.*, 281 Ga. App. 768, 774–75(2)(b) (637 SE2d 163) (2006). See also *Matter of Cassidy*, 892 F2d 637, 641 (7th Cir. 1990) (noting that "[j]udicial estoppel is a doctrine intended to prevent the perversion of the judicial process," and is "to be applied where intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum designed for suitors seeking justice . . . [and] to prevent litigants from playing fast and loose with the courts," and is also "intended to protect the courts rather than the litigants, so it follows that a court, even an appellate court, may raise the estoppel on its own motion in an appropriate case.") (citations omitted)).

[22] *See* supra note 21.

was "an amendable defect."[23] And in light of this amendable defect, the court gave Manna 30 days from the date of its order "to obtain counsel and amend their pleadings accordingly." Finally, the court warned Manna that "failure to comply with this Order *may* result in an Order Dismissing the Complaint."[24]

♦ On November 13, 2023, a few weeks after the due date for Manna to obtain counsel but before any dismissal by the trial court, Heo files a handwritten, three-sentence, *pro se* motion "[c]anceling the case" and stating "*I* need to cancel it please. *I* can't afford a lawyer." As previously noted, the motion was signed only by Heo and makes *no* mention of Manna.

♦ On November 21, 2023, an attorney files a notice of appearance as counsel for Heo and Manna. At this point, there has still been no dismissal of the case by the trial court.

♦ On November 25, 2023, Heo and Manna file an *amended* complaint, which is identical to the original complaint—except that it was filed by their newly obtained counsel.

♦ On November 29, 2023, the trial court holds a hearing, which the transcript labels as a "Counterclaim Bench Trial." That same day, the

---

[23] See *Associated Drs. of Warner Robins, Inc. v. U.S. FoodService of Atlanta, Inc.*, 250 Ga. App. 878, 878–79(1) (553 SE2d 310) (2001) (noting that corporations can only be represented by an attorney, so any answer filed by a non-attorney/corporate officer is "defective," but it is "an amendable defect," which is cured under OCGA § 9–11–15 when, "prior to entry of a pretrial order, an attorney . . . filed an amended answer, which related back to the date of the original answer." (quotation marks omitted). Accord *Peachtree Plastics v. Verhine*, 242 Ga. App. 21, 22 (528 SE2d 837) (2000).

[24] (Emphasis added).

14

court issues its "Final Order and Judgment." In doing so, the court notes that "the hearing was solely on [Youn's] Counterclaim." The court also notes that, even though Manna's counsel argued that the November 13th dismissal only applied to Heo, Heo "failed to timely comply with the *Order to Obtain Counsel* issued on September 27, 2023." Finally, the court concludes that "neither side has met their respective burden" as to "both the Counterclaim and Plaintiff Manna's Amended Complaint."

Suffice it to say, this case is a mess—as evinced by the above timeline. So, what are we to make of all this? First, it seems fairly clear—especially in light of Manna's counsel's position in the prior proceeding—that Heo voluntarily dismissed himself from the first lawsuit and his pleading doing so makes no mention of Manna.[25] Second, neither party has challenged the trial court's conclusion that Heo's attempt to represent Manna was an amendable defect. Third, the court's "Order to Obtain Counsel" did not provide that Manna's failure to timely comply within 30 days would result in an automatic dismissal of Manna from the lawsuit, but only that the court had the power to dismiss it. Fourth, Manna's counsel filed his notice of appearance and amended complaint on behalf of the company before any dismissal was issued by the court. And finally, the court's "Final Order and Judgment" is inherently

---

[25] As explained above, OCGA § 9-11-41 provides that a plaintiff may voluntarily dismiss his or her case "without order or permission of the court[.]"

15

contradictory. On the one hand, the order appears to suggest that Manna was dismissed from the lawsuit by Heo or *latae sententiae*[26] once the 30-day period expired (even though its "Order to Obtain Counsel" only provides that the failure to comply with that deadline "may" result in a dismissal); and on the other hand, the court's "Final Order and Judgment" purports to rule on the merits of Manna's amended complaint.

If we charitably interpret this procedural mire, here is what we can glean from it. Heo's individual claim was voluntarily dismissed and Manna remained a party to the first lawsuit in the absence of a voluntary dismissal under OCGA § 9-11-41 (a)(1)(A)[27]—which requires that such dismissal must be in *writing* (and no such filing

---

[26] See *Latae sententiae* and *ferendae sententiae*, Wikipedia, https://en.wikipedia.org/wiki/Latae_sententiae_and_ferendae_sententiae (last visited on February 6, 2026) (explaining that the Latin meaning of *latae sententiae* is "of a judgment having been brought," and it is a "penalty the liability for which is imposed ipso facto, automatically, by force of the law itself, at the very moment a law is contravened; the fact that the offender is subject to the penalty is thus axiomatic").

[27] See OCGA § 9-11-41 (a)(1)(A) (providing that a plaintiff may voluntarily dismiss his or her case "[b]y filing a *written* notice of dismissal at any time before the sixtieth day following the date the opposing party serves an answer" (emphasis added)).

was made by Manna).[28] Otherwise, there would need to be a clear and unequivocal order from the trial court dismissing Manna from the lawsuit, which we also do not have. So, under these unusual circumstances, we conclude the court was not divested of jurisdiction to adjudicate Manna's claims.

That said, even if we might be mistaken, and the trial court arguably lacked jurisdiction over Manna in the prior lawsuit due to Heo's voluntary dismissal, it is ultimately of no consequence given our holding in Division 2. Indeed, because we conclude Manna was not given a full and fair opportunity to litigate its claims in the

---

[28] After Heo voluntarily dismissed himself from the case, Manna obtained counsel who filed an amended complaint "in an abundance of caution" and represented Manna at the final hearing. Counsel stated in the instant proceeding that after he filed the amended complaint, he "researched the issue and concluded that any amendment was ineffective because the case had already been dismissed, and there was nothing for it to relate back to, rendering it ineffective or moot." And indeed, *if* he had filed a valid, written motion to dismiss the case on Manna's behalf, the amended complaint would have been inoperative to revive its action against Youn. See *Smith v. Ga. Asset Props. LLC*, 251 Ga. App. 595, 596(1) (554 SE2d 561) (2001) (noting that "[b]ecause the underlying case had been dismissed, [the plaintiff] would have had to file a new action against [the defendant] to revive his claims and could not simply file an amended complaint in a case that had been dismissed."). But here, Manna did not voluntarily dismiss its complaint in writing through its counsel. Manna's counsel also argued in the prior proceeding that the dismissal only applied to Heo's individual claims. So, while Manna's counsel seemed confused before the hearing as to whether his client's case had been dismissed before he was hired and filed the amended complaint, *he* never moved to dismiss the company's case.

17

first lawsuit, we end up in the same place—res judicata does not bar the company's claims.

2. Manna also argues that—even if the trial court in the first lawsuit had jurisdiction over the company's case—the instant complaint is not barred by res judicata because it did not have a full and fair opportunity to litigate its claims in the prior proceeding. On this point, we agree.

For the doctrine of res judicata to apply, the party against whom the doctrine is raised "must have had a full and fair opportunity to litigate the issues in the first action."[29] And here, the transcript from the final hearing in the first lawsuit establishes that Manna was unable to litigate its claims *at all*.

Before the hearing, the trial court sent Manna's counsel an email, which noted, "[p]lease note that a voluntary dismissal was filed by *the pro[ ]se petitioner* prior to your Entry of Appearance in the case," and that "the case was scheduled for a final hearing *on [Youn's] counterclaim*, but any issues regarding that should be discussed with

---

[29] *QOS Networks Ltd. v. Warburg, Pincus & Co.*, 294 Ga. App. 528, 531(1) (669 SE2d 536) (2008). See *Dep't of Transp. v. Revco Disc. Drug Centers, Inc.*, 322 Ga. App. 873, 876(1) (746 SE2d 631) (2013) (explaining that one requirement for res judicata is that "the party against whom it is asserted must have had a full and fair opportunity to litigate the issues presented in the other action").

opposing counsel or can be addressed with the [j]udge at the hearing."[30] And indeed, the transcript of the hearing describes the proceeding as a "Counterclaim Bench Trial."

At the outset of the hearing, the trial court advised the parties that "[t]he plaintiff filed a voluntary dismissal of the complaint," and this dismissal "was filed prior to the plaintiff being represented by [its attorney]," so the case is "scheduled for a final hearing today on *the defendant's counterclaim.*"[31] The court then asked *Youn's* attorney if he would like to make any opening remarks because they were "proceeding on [*his*] *counterclaim.*"[32] And following opening remarks by Youn's attorney, Manna deferred its argument until the close of the hearing. The court also told Manna's

---

[30] (Emphasis added).

[31] (Emphasis added). It is undisputed that *Heo* voluntarily dismissed his claims against Youn, and the only plaintiff represented by counsel at the final hearing was Manna. So, despite later (ostensibly) adjudicating Manna's claims on the merits, the trial court appeared to believe Heo's voluntary dismissal of the case effectively dismissed Manna's claims as well. Indeed, at one point, the court told Manna's counsel, "[y]ou understand that the complaint was *voluntarily dismissed, so you cannot ask for a money judgment.*" (Emphasis added). This confusion between the court's position during the bench trial and its dismissal of Manna's complaint on the merits is particularly odd because the court issued its order shortly after the hearing on the same day.

[32] (Emphasis added).

19

counsel, "[y]ou understand that the complaint was voluntarily dismissed, *so you cannot ask for a money judgment.*"[33] Later, at the close of evidence, the court reiterated that the hearing was being held only on Youn's counterclaim, telling his attorney, "[s]ince we have proceeded on [Youn's] counterclaim, he would have the right to give an initial and concluding argument."

Then, in its written order dismissing Manna's complaint in the first lawsuit, the trial court noted, "[o]n November 29, 2023, [it] held a final hearing solely on the Defendant's counterclaim." Even so, the order also concluded as follows:

> Accordingly, as the Plaintiff Manna failed to *prove the Complaint for damages*, Manna Roof and Construction, LLC's Complaint is hereby DISMISSED. Bal Heo's Complaint was voluntarily dismissed . . . as evidenced by the docket. Additionally, as [Youn] has failed to prove his Counterclaim for damages, [his] Counterclaim is dismissed. *Neither party is awarded damages.*[34]

So, even though the court was technically correct that only Heo, proceeding *pro se*, dismissed his complaint and Manna remained the only plaintiff in the case who was required to prove damages, the court then prohibited Manna from litigating its claims

---

[33] (Emphasis added).

[34] (Emphasis added).

at the final hearing. Indeed, the court expressly advised Manna's counsel that the hearing was being held solely on Youn's counterclaim and informed him—erroneously—that he *could not request damages* because his client's case had already been dismissed. Given these circumstances, we agree with Manna that it was not given a full and fair opportunity to litigate its claims against Youn in the first lawsuit, and so the court erred in dismissing the company's complaint here as being barred by res judicata.

For all these reasons, we reverse the trial court's order dismissing Manna's complaint.

*Judgment reversed. Mercier, J., and Senior Judge C. Andrew Fuller, concur.*